UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

K.U.,[1]

             Petitioner,

    v.

JOSEPH E. FREDEN et al.,

             Respondents.

_____

                                  25-CV-361-LJV
                                  DECISION & ORDER

The petitioner, K.U., has been detained in the custody of the United States Department of Homeland Security for more than one year. Docket Item 1 at ¶¶ 1, 20. On April 23, 2025, K.U. filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. K.U also moved to proceed under a pseudonym and to submit his petition and certain exhibits under seal. Docket Item 4. On May 9, 2025, the government filed a letter in response to the petition, Docket Item 6, and a week later, K.U. replied, Docket Item 7.

For the reasons that follow, this Court grants in part and denies in part K.U.'s motion to proceed under a pseudonym and to file his petition and its exhibits under seal, and it grants his petition in part.

_____

[1] K.U. has moved to proceed under a pseudonym. Docket Item 4. For the reasons explained below, the Court grants that request. *See infra* Section I.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

K.U. "is a citizen and national of Nigeria."  Docket Item 1 at ¶ 20.  In the mid-1990s, having "fled Nigeria for his safety," K.U. "entered the United States . . . and has been living [here] continuously since then."  *Id.*  Soon after he came to this country, he found work at a company "where he . . . became a victim of labor trafficking."  *Id.* at ¶ 27.

In 2023, K.U. was convicted of conspiracy to commit money laundering and sentenced to 15 months' imprisonment and two years' supervised release.  *Id.* at ¶ 20.  In May 2024, K.U. was taken into the custody of Immigration and Customs Enforcement ("ICE"), and he has been detained in ICE custody ever since without a bond hearing.  *See id.*  K.U. currently is held at BFDF.  *Id.*

K.U.'s immigration proceedings remain ongoing.  More specifically, he has applied in immigration court for withholding of removal under 8 U.S.C. § 1231(b)(3) and for deferral of removal under the Convention Against Torture ("CAT").  Docket Item 3-7 at 2-3; Docket Item 6 at 2.[3]  On March 31, 2025, an immigration judge denied his application for withholding of removal but granted his application for deferral of removal under CAT.  Docket Item 3-7 at 12-14; Docket Item 6 at 2.  Both sides then appealed,

---

[2] The following facts are taken from K.U.'s petition and its attached exhibits, *see* Docket Items 1, 2, 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8, 2-9, 3, 3-1, 3-2, 3-3, 3-4, 3-5, 3-6, 3-7, 3-8, and 3-9, and the government's response, Docket Item 6, and are, at least as to K.U.'s prolonged detention claim, undisputed.

Because, as explained below, the Court does not reach K.U.'s second claim, it omits discussion of any facts relevant only to that claim, such as K.U.'s medical history and condition.

[3] Page numbers in docket citations refer to ECF pagination.

and K.U.'s case remains pending before the Board of Immigration Appeals. *See* Docket Item 1 at ¶ 47; Docket Item 6 at 2.

K.U.'s petition raises two claims. Docket Item 1 at 20-24. First, he says that his "prolonged detention of more than [one year] without a bond hearing violates the Due Process Clause," requiring "either a constitutionally adequate bond hearing or [his] immediate release." *Id.* at ¶¶ 67-68. Second, he says that this Court should order his immediate release under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), in light of the "extraordinary circumstances" of his case.[4] *Id.* at ¶¶ 69-76. Those circumstances include, K.U. says, the serious "inadequacy of the medical care he has received" while in detention, which has led to an "extreme decline in his mental and physical health." *Id.*at ¶ 73.

In response to the petition, the government, "[w]hile reserving all rights, including the right to appeal, . . . acknowledge[d] that [the Second Circuit's decision] in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), would likely lead this Court to order that [K.U] receive a bond hearing." Docket Item 6 at 1. And it argued that this Court should "defer deciding" K.U.'s second claim—namely, that he should be released under *Mapp*— because that issue would be rendered "moot" if this Court "were to order a bond hearing under *Black v. Decker*" and the immigration judge ordered K.U.'s release. *See id.* at 4. K.U. then replied, concurring in the government's request that the Court decide K.U.'s

---

[4] In *Mapp*, the Second Circuit held that "the federal courts have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in criminal habeas cases." 241 F.3d at 223. In assessing such claims for bail, the Second Circuit explained, courts "must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" *Id.* at 230 (alterations in original) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981)).

prolonged detention claim without further briefing and defer both further briefing and a decision on the second claim "until [K.U.'s] prolonged detention claim is adjudicated and any bond hearing ordered . . . is conducted."  Docket Item 7 at 1.

In light of the parties' joint request, *see id.*, the Court considers only K.U.'s first claim and defers decision on his second.  And for the reasons that follow, it holds that because K.U.'s prolonged detention violates the Due Process Clause, he is entitled to a bond hearing.

## DISCUSSION

### I.    MOTION TO PROCEED UNDER A PSEUDONYM AND FOR SEALING

K.U. has moved to proceed under a pseudonym and to submit both his petition and certain exhibits to that petition under seal.  Docket Items 4 and 4-2.  The government has neither opposed nor otherwise responded to that motion, *see* Docket Item 6, and the time to do so has passed, *see* Docket Item 5 at 1 n.1.  For the reasons that follow, the Court grants K.U.'s motion in part.

#### A.    Proceeding under a Pseudonym

In federal court, "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  "Th[at] requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008).  In fact, "pseudonyms are the exception and not the rule," and the party seeking anonymity "must make a case rebutting" the "presumption of disclosure."  *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam).  A plaintiff meets that burden

only when "the plaintiff's interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189.

The Second Circuit has provided a "non-exhaustive" list of ten factors for courts to consider when determining whether a plaintiff should be permitted to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (alterations, citations, and internal quotation marks omitted).  After weighing those factors, this Court concludes that K.U. should be permitted to proceed by pseudonym.

First, at least some of the claims here involve allegations of a "sensitive" and "personal nature."  *Id.* at 190 (factor one).  The information K.U. seeks to file under seal relates to his immigration proceedings, in which he has sought—and was granted— relief because he had been targeted by certain individuals in Nigeria and would be at risk of physical retaliation if forced to return to that country.  *See* Docket Item 1 at ¶¶ 18,

25-29.  And his petition and its exhibits include detailed information about the mistreatment K.U. says he suffered during his early life in Nigeria and as a victim of labor trafficking in the United States; his pleadings also contain a wealth of detail about his medical history.  Such allegations clearly are both "sensitive" and "personal."  *See MM v. Mayorkas*, 2024 WL 1795766, at *2 (S.D.N.Y. Apr. 25, 2024) (granting motion to proceed anonymously where "[t]he facts underlying [p]laintiff's claim"—namely, allegations involving her "fear of persecution and retaliation in Tunisia due to her sexuality"—involved a "highly sensitive and personal matter"); *Doe v. Barr*, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020) (granting noncitizen's motion to proceed under a pseudonym in habeas action where "the underlying facts of [the] petition [we]re highly sensitive and personal, involving his HIV status, history of abuse, and history of mental illness" and where petitioner was "seeking relief from removal . . . because he face[d] a risk of harm, persecution, and torture" in his home country).

The second, third, and fourth factors—all of which concern the potential harm of identification—also weigh in favor of allowing K.U. to proceed anonymously.  *See Sealed Plaintiff*, 537 F.3d at 190.  K.U.'s petition details the persecution to which he and his family already have been subjected, *see* Docket Item 1 at ¶¶ 18, 25-29, and he says that "he fears [further] physical retaliation if the details [of his claims] become public," *see* Docket Item 4-2 at 7.  "Federal courts have permitted asylum seekers to proceed anonymously in federal court proceedings," noting that such litigants "are particularly vulnerable to retaliation if their names are revealed."  *MM*, 2024 WL 1795766, at *2 (collecting cases).  And because K.U. seeks immigration relief related to persecution and retaliation, *see generally* Docket Item 1, the Court finds that he falls within this

"particularly vulnerable" category and that the second, third, and fourth factors weigh heavily in favor of granting his motion to proceed under a pseudonym, *see MM*, 2024 WL 1795766, at *2.

Other factors likewise weigh in favor of allowing K.U. to proceed by pseudonym. For one thing, all of the respondents are government officials. *See Sealed Plaintiff*, 537 F.3d at 190 (fifth factor). Courts are more likely to allow a party to proceed under a pseudonym when the adverse party is a government entity because "[s]uits against the government 'involve no injury to the [g]overnment's reputation.'" *See Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019) (quoting *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *7 (S.D.N.Y. Nov. 26, 2012)); *see also Doe v. Smith*, 2018 WL 11584808, at *1 (D. Mass. Nov. 5, 2018) (similar). Moreover, K.U.'s identity has not been disclosed to the public, *see* Docket Item 4-2 at 8, and that supports his motion as well, *see Sealed Plaintiff*, 537 F.3d at 190 (factor seven).

Finally, the public interest in knowing the details of K.U.'s identity is weak here, where the immediate dispute before this Court turns on the constitutional question of whether a detainee in his circumstances is entitled to a bond hearing. *See id.* (factor nine); *see also Does 1-2 v. Hochul*, 2022 WL 836990, at *2, *10 (E.D.N.Y. Mar. 18, 2022) (noting that "the identity of each" plaintiff added "little-to-no value" when the lawsuit "rais[ed] an abstract question of law" about the facial constitutionality of a state regulation). And that is especially true because both sides agree that the answer to the purely legal question is controlled by recent Second Circuit precedent. *See* Docket Item 1 at ¶¶ 60-65; Docket Item 6 at 3; Docket Item 7 at 1.

The remaining factors are relatively neutral.  The government knows K.U.'s identity, and it has not argued that it would be prejudiced if he proceeds anonymously.  *See generally* Docket Item 6; *see also Sealed Plaintiff*, 537 F.3d at 190 (factor six).  And while there may be "alternative mechanisms for protecting the confidentiality of the plaintiff," *Sealed Plaintiff*, 537 F.3d at 190 (factor ten), those mechanisms might risk disclosure and therefore do not outweigh the factors favoring anonymity—in particular, the possible harm to K.U.  Finally, although the public has an interest in this litigation, that interest does not necessarily extend to the identity of the petitioner.  *See id.* (factor eight).  And the Court can require K.U. to proceed by his full name if circumstances change.  *See Doe v. Gooding*, 2021 WL 5991819, at *3 (S.D.N.Y. July 29, 2021) (granting plaintiff's motion to proceed by pseudonym "without prejudice to future objection from [d]efendant").

For all those reasons, K.U.'s motion to proceed by the pseudonym of his initials is granted.[5]

## B.    Sealing the Petition and Its Attached Exhibits

Under Local Rule of Civil Procedure 5.3(a), "parties, complaints, and documents are [presumptively] publicly accessible," and "[a] party seeking to have a case, party,

---

[5] Because the Court grants K.U.'s motion to proceed by pseudonym, it orders that the government's response to the petition—which includes a reference to his criminal case and thus to his last name—shall remain under seal.  Within 14 days of the date of this order, the government shall file a redacted version of its response that redacts any references to K.U.'s first and last name, including the portion of the second paragraph of the second page beginning with the words "In one" to the end of the paragraph.  The exhibits to the government's response, which consist of K.U.'s immigration records, shall remain under seal.  *See* Docket Items 6-1, 6-2, 6-3, 6-4, 6-5, and 6-6.

complaint, document, or portion of a document filed under seal bears the burden of demonstrating that such material should be sealed under applicable law." That rule is consistent with the longstanding "'presumption of access' to judicial records," which is rooted in the Constitution as well as the common law. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)); *see also United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government.").

To determine whether a right of access attaches to a filing, the court must first decide whether the record at issue constitutes a "judicial document." *Bernstein*, 814 F.3d at 141. The Second Circuit has explained that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"; instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). If a court determines that a filing is a "judicial document[]," that document may be sealed only "if a sufficiently compelling countervailing interest is demonstrated," *United States v. King*, 2012 WL 2196674, at *1-2 (S.D.N.Y. June 15, 2012) (citing *Lugosch*, 435 F.3d at 120) (common law standard), and if the court makes "'specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest,'" *id.* at *2 (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 13-14 (1986)) (First Amendment standard).

In this case, K.U. seeks to file under seal both his petition, Docket Item 1, and all but one of the exhibits to that petition, Docket Items 2, 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8, 2-9, 3, 3-1, 3-2, 3-3, 3-4, 3-5, 3-6, 3-7, and 3-8, which include K.U.'s immigration and medical records and declarations of K.U. and others regarding the alleged persecution he and his family have experienced.  *See* Docket Item 4-2 at 9-11.  Thus, those exhibits are largely irrelevant to this Court's disposition of K.U.'s prolonged detention claim, the only claim currently before this Court.  That claim turns not on the substantive merits of his immigration case but on the fact of his detention during the course of those proceedings.  Indeed, this Court does not refer to or rely on any of the exhibits throughout the course of its analysis below.  *See infra* Section II.  So it is not clear that the exhibits that K.U. seeks to file under seal are in fact judicial documents to which a right of access attaches.

But regardless of whether the exhibits are judicial documents, this Court grants K.U.'s motion to seal them for the same reasons that led this Court to allow K.U. to proceed by pseudonym.  *See supra* Section I.A.  Again, the potential harm of disclosing K.U.'s identity—including the fact that it could cause him to be subject to persecution and harassment—outweighs the public's interest in disclosure under both the common law and First Amendment standards.  *See King*, 2012 WL 2196674, at *2; *see also Kharis v. Sessions*, 2018 WL 5809432, at *3 (granting petitioner's motion to file "portions of his asylum application" under seal based on finding that there were "compelling reasons to keep th[e] . . . information confidential, given the sensitive nature of asylum applications alleging fear of persecution or harassment").  K.U.'s motion to seal the exhibits therefore is granted.

The analysis with respect to K.U.'s petition, however, is a bit different. The petition, after all, is unquestionably a judicial document. *See Amodeo*, 44 F.3d at 145. And while the same reasons that counseled in favor of allowing K.U. to proceed under a pseudonym and to file exhibits under seal weigh in favor of allowing him to redact any personally identifiable information in the petition, the Court finds that even those reasons would not justify sealing the petition in its entirety. After all, the petition contains many paragraphs that consist only of legal analysis or facts so general that they could not possibly identify K.U. *See* Docket Item 1. In other words, sealing the petition wholesale would not be the most narrowly tailored relief necessary to safeguard the petitioner's privacy and safety interests here. Instead, allowing K.U. to file an unredacted version of the petition under seal and an unsealed redacted version that omits any personally identifiable information is sufficient. *See* Docket Item 4-2 at 11 (seeking in alternative to file redacted versions of documents).

In sum, K.U.'s motion is granted insofar as he seeks to proceed under a pseudonym and to file certain exhibits under seal. It is denied insofar as he seeks to file his petition under seal; instead, the unredacted version of the petition may remain under seal, but within 14 days of the date of this decision and order, K.U. shall file a redacted version of the petition on the docket. All personally identifiable information in the petition may be redacted.[6]

---

[6] Because K.U. moved to file his petition and its exhibits under seal when he commenced this action, the Clerk of the Court placed this case under seal. The Clerk of the Court now shall unseal this case in accordance with the Court's order here. More specifically, the petition and its exhibits, Docket Items 1, 2, 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8, 2-9, 3, 3-1, 3-2, 3-3, 3-4, 3-5, 3-6, 3-7, and 3-8; the government's response, Docket Item 6; and the exhibits attached to the government's response, Docket Items 6-6-1, 6-2, 6-3, 6-4, 6-5, and 6-6, shall remain under seal with access given only to the

## II.    HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  K.U. alleges that his continued detention violates his right to procedural due process under the Constitution and therefore asks this Court to order either his "immediate release" or a "constitutionally adequate bonding hearing."  Docket Item 1 at ¶¶ 67-68.

Section 1226 of the Immigration and Nationality Act "generally governs the process of . . . detaining" noncitizens during removal proceedings.  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1226).  While the government "may release" noncitizens detained under section 1226(a), those detained under section 1226(c)—which applies to noncitizens who have committed certain criminal offenses or engaged in certain terrorist activities—must be detained unless narrow circumstances related to witness protection are met.  *Id.* at 288-89.  In *Jennings*, the Supreme Court held that the statute does not require—and in fact prohibits—the government from offering a noncitizen detained under section 1226(c) the opportunity to challenge the detention at a bond hearing.  *See id.* at 303-04.  But the Court declined to decide whether the Constitution nonetheless requires that noncitizens held under section 1226(c) be afforded such an opportunity.  *Id.* at 312.

---

parties in this case.  The redacted versions of the petition, Docket Item 1, and the government's response, Docket Item 6, however—which this Court has ordered the parties to file—shall not be sealed.  Notwithstanding any of the above, the docket shall continue to be under the restrictions generally applicable to immigration habeas cases under Federal Rule of Civil Procedure 5.2(c).

In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), the Second Circuit answered that question, holding that "a noncitizen's constitutional right to due process precludes . . . unreasonably prolonged detention under section 1226(c) without a bond hearing." *Id.* at 138. Further, it held that the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), "supplies the proper framework for determining when and what additional procedural protections are due such a detainee." *Black*, 103 F.4th at 138. More specifically, the Second Circuit explained that courts should analyze a noncitizen's due process challenge to detention "under the *Mathews* factors," including

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).

Like the noncitizens in *Black*, K.U. is detained under section 1226(c). Docket Item 1 at ¶¶ 50, 62; Docket Item 6 at 1. In fact, the government has conceded that *Black* applies here: In its response to K.U.'s petition, the government says that it "disagrees with the Second Circuit's decision in *Black*" but acknowledges that "this Court is currently bound by *Black* and that applying *Black* in this case likely would lead to a grant of [K.U.'s] habeas petition." Docket Item 6 at 3. For the reasons that follow, this Court agrees: *Black* controls, and applying the *Mathews* factors necessarily requires this Court to grant K.U.'s petition in part.

## A.    The Private Interest Affected

As an initial matter, the Court finds that the "private interest affected" is a compelling one. Indeed, as the Second Circuit explained in *Black*, the private interest

implicated in immigration detention cases is "the most significant liberty interest there is—the interest in being free from imprisonment." 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). And while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), K.U. has lived in this country for more than two decades, Docket Item 1 at ¶ 20. Further, he has sought relief from deportation, and his case remains pending before the Board of Immigration Appeals. *See id.* at ¶ 18; Docket Item 3-7 at 2-3; Docket Item 6 at 3. So his interest in liberty *in the United States* must be particularly strong for him to subject himself to prolonged detention during the appeals process, which can be lengthy. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

Moreover, K.U. has been in ICE custody for about a year. *See* Docket Item 1 at ¶ 1. In *Black*, the Second Circuit held that even a "seven-month-long detention" absent procedural protections was a "serious[] infringe[ment]" of liberty. 103 F.4th at 151. And while, like the petitioners in *Black*, K.U.'s "detention[] in some sense w[as] the result of a criminal adjudication, since a conviction was the premise for applying section 1226(c)," he has "served his entire sentence" of incarceration. *Id.* (internal quotation marks omitted); *see* Docket Item 1 at ¶¶ 28, 30-31. Thus, his current "detention[] d[oes] not arise from new or unpunished conduct." *Black*, 103 F.4th at 151; *see* Docket Item 1 at ¶¶ 28, 30-31.

In sum, as in *Black*, "the first *Mathews* factor weighs heavily in favor of" K.U. *See Black*, 103 F.4th at 152.

### B.     The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards

In light of the procedures used thus far, there is a significant risk of an erroneous deprivation of K.U.'s liberty.  As the Second Circuit explained, "the 'procedures used' for section 1226(c) detainees are very few" and "include no mechanism for a detainee's release, nor for individualized review of the need for detention."  *Id.*  In fact, as already noted, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is actually a danger or a flight risk.  *See Jennings*, 583 U.S. at 303-04.  And "[i]n the absence of any meaningful initial procedural safeguards, . . . almost *any* additional procedural safeguards at some point in the detention would add value."  *Black*, 103 F.4th at 153.

Indeed, K.U. has had no opportunity to challenge the basis for his detention—to argue, for instance, that he poses no danger to the community or risk of flight while his appeal proceeds.  *See id.*; Docket Item 1 at ¶ 1.  So this Court finds—just as the Second Circuit did in *Black*—that an "individualized bond hearing at which an [immigration judge could] consider" whether those factors justify K.U.'s continued detention would add significant value here.  103 F.4th at 153.

The second factor also weighs in K.U.'s favor.

### C.     The Government's Interest

Finally, this Court recognizes that the government's interest in detaining K.U. also may be strong.  In mandating the detention of noncitizens who have committed certain crimes, section 1226(c) reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore v. Kim*, 538 U.S. 510, 518-19 (2003);

*see also Jennings*, 583 U.S. at 303-04.  It is "well[ ]established" that the government has a "legitimate" and compelling interest in both those aims.  *Black*, 103 F.4th at 153.

But those interests do not outweigh K.U.'s liberty interest.  As already explained, K.U. has had no opportunity to challenge the statutory assumption that there is *any* risk he will flee or endanger the community while his case proceeds.  Therefore, absent a bond hearing, it is not even clear that K.U.'s detention is required to serve the government's interests.  Further, the government has not identified any special interests that would justify K.U.'s continued detention here without an individualized bond hearing.  *See generally* Docket Item 6.

The third factor therefore weighs in K.U.'s favor as well.

## C.    Conclusion

In sum, under the *Mathews* framework, K.U.'s continued detention absent any procedural protections violates the Due Process Clause.  The Court nonetheless declines to grant—at least at this time—K.U.'s request for "immediate release."  *See* Docket Item 1 at ¶ 68.  Instead, consistent with the Second Circuit's reasoning, this Court finds that an individualized bond hearing where the government bears the burden of justifying the petitioner's continued detention is the appropriate remedy.  *See Black*, 103 F.4th at 155-59; *see also* Docket Item 1 at ¶ 68 (requesting either "immediate release" or "a constitutionally adequate bond hearing").  More specifically, due process entitles K.U. to an individualized bond hearing before an immigration judge where the government must show, by clear and convincing evidence, that his continued detention is necessary.  *Black*, 103 F.4th at 155-59.  At that hearing, the immigration judge must consider whether "alternatives to detention" would address the government's interest in

16

ensuring K.U.'s appearance and the safety of the community. *See id.* at 155. And if the immigration judge decides that a bond might serve that interest, the judge must "consider [K.U.'s] ability to pay" in setting any bond amount. *See id.* at 158.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that K.U.'s motion to proceed under a pseudonym and for sealing, Docket Item 4, is GRANTED IN PART and DENIED IN PART. To the extent that K.U. seeks to proceed under a pseudonym and to seal the exhibits submitted in connection with his habeas petition, his motion is granted, and the exhibits shall remain under seal. To the extent that he moves to file his petition under seal, the Court denies the motion in part. K.U.'s unredacted petition shall remain under seal, but K.U. shall file a redacted version of the petition that redacts all personally identifiable information; and it is further

ORDERED that the government's response, Docket Item 6, shall remain under seal but **within 14 days of the date of this decision and order**, the government shall file a redacted version of its response that redacts any references to K.U.'s first and last name, including the portion of the second paragraph of the second page beginning with the words "In one" to the end of the paragraph; and it is further

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release K.U. from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether K.U.'s continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that K.U.'s continued detention is

17

necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure K.U.'s appearance and the safety of the community—that is, even with conditions, K.U. presents an identified and articulable risk of flight or a threat to the community; and it is further

ORDERED that the immigration judge must consider K.U.'s ability to pay when setting any bond amount; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order; and it is further

ORDERED that K.U.'s second claim, *see* Docket Item 1 at ¶¶ 69-76, is held in abeyance pending the outcome of his bond hearing.  Should the immigration judge deny K.U.'s request for bond, the Court will set a briefing schedule on that claim.


SO ORDERED.

Dated:   May 21, 2025
             Buffalo, New York



  */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE